UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARINE POGOSYAN,<br><br>                Petitioner,<br><br>     v.<br><br>PAMELA BONDI, et al.,<br><br>                Respondents. | Case No. 5:25-cv-03121-SRM-AS<br><br>**ORDER REGARDING THE PRELIMNARY INJUNCTION [13]** |

## I. BACKGROUND

On November 19, 2025, Narine Pogosyan ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C § 2241 against Attorney General Pamela Bondi, Secretary of the Department of Homeland Security Kristi Noem, the United States Department of Homeland Security, Warden F. Semaia, and Immigration and Customs Enforcement Field Office Director Jaime Rios, (collectively, "Respondents"), seeking release from Immigration and Customs Enforcement ("ICE") detention, declaratory relief, attorneys fees, an order enjoining Respondents from re-detaining Petitioner unless they provide her with notice, an informal interview, an individualized determination on her suitability for release, and individualized evidence that removal will occur in the reasonably foreseeable future. *See* Dkt. 1.

On the same day, November 19, 2025, Petitioner filed an *Ex Parte* Application for a Temporary Restraining Order ("TRO") requesting that Respondents immediately release Petitioner from custody on an order of supervised release until such time as ICE complies with the regulations governing revocation of her release, including a showing that her deportation is reasonably foreseeable. *See* Dkt. 2 at 12–13.[1]

On December 3, 2025, the Court issued an order granting, in part, Petitioner's *Ex Parte* Application for a Temporary Restraining Order ("TRO Order"). *See* Dkt. 13 at 16. With respect to the first and third causes of action, the Court held that Petitioner failed to make a clear showing that she was likely to succeed on the merits of her claims. With respect to the second cause of action, the Court held that Petitioner was likely to succeed on her claim that she was not provided with an informal interview upon revocation of supervised release because the record showed conflicting evidence suggesting that the interview may not have taken place. *See id.* Given that Petitioner's last uncontested status was after ICE had served her with written notice and re-detained her, the Court narrowly tailored the temporary injunctive relief to include a prompt informal interview. *Id.* at 14–15. Accordingly, the Court ordered Respondents "to provide Petitioner with an informal interview by December 10, 2025, as required under 8 C.F.R. § 241.13(i)(3)." *Id.* Respondents were further ordered "to submit a declaration from the ICE official who conducted the interview by December 12, 2025." *Id.* The Court finally ordered Respondents to show cause by December 8, 2025, why a preliminary injunction should not issue. *Id.*

On December 9, 2025, Respondents filed their response to the order to show cause as to why a preliminary injunction should not issue. Dkt. 14. Respondents stated that Petitioner was provided with an informal interview on December 9, 2025. *See* Dkt. 14 at 2; *see also* Dkt. 15-2. Respondents requested that the order to show cause be discharged considering Petitioner was provided with an informal interview on December 9. *Id.* at 2.

---

[1] Page citations refer to CM/ECF pagination.

Thereafter, on December 12, 2025, Respondents filed a supplemental response, which included a declaration from Deportation Officer Ana Juarez. *See* Dkt. 15-1. Officer Juarez declared that on December 9, 2025, "another informal interview was conducted in which POGOSYAN had an opportunity to respond to the reasons for revocation of her OSUP. PO[G]OSYAN's attorney was present during the interview over the phone." *Id.* at 1. To prove this interview occurred, Juarez attached to her declaration a document titled "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)." *See* Dkt. 15-2. According to that form, Deportation Officer Noah Kichak conducted the interview and Petitioner's other attorney, Jimmy Pham, was present during the informal interview. *See id.*

On December 15, 2025, Petitioner replied, contending that Respondents were still in violation of the revocation procedures under Title 8 of the Code of Federal Regulations, section 241.13(i)(3) and that a preliminary injunction should be granted on the second cause of action of the Petition. *See* Dkt. 16 at 2–4. Although Petitioner agrees that an informal interview was conducted on December 9, 2025, *id.* at 2, she alleges it lacked integrity because Respondents failed to comply with the Court's order to submit a signed declaration by the officer who interviewed Petitioner on December 9. *Id.* at 3.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs preliminary injunctions. "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). To obtain a preliminary injunction, the movant must establish "that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a preliminary injunction is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a preliminary injunction under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant may obtain a preliminary injunction if she can show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, and (4) the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

## III.   DISCUSSION

In the Petition for Writ of Habeas Corpus, Petitioner's first cause of action asserts that Respondents did not properly revoke her release under Section 241.13(i)(2) because there is no significant likelihood that her removal is reasonably foreseeable. Dkt. 1 at 10. The second cause of action contends that Respondents failed to comply with the revocation procedures under Section 241.13(i)(3). *Id.* at 10-11. The third cause of action is a Fifth Amendment due process claim based on Respondents' alleged failure to give her an "individualized determination by impartial adjudicators as to whether detention is justified based on danger or flight risk." *Id.* at 10–11.

//
//
//

### A.  Likelihood of Success on the Merits

####   1.  First and Third Causes of Action

As stated more fully in the Court's December 3, 2025, order on Petitioner's Application for Temporary Restraining Order, Dkt. 13, the Court held that Petitioner failed to make a clear showing that she was likely to succeed on the merits of these claims. Dkt. 13 at 7–10, 12–13. As neither side raises these issues in their preliminary injunction briefing, the Court will not re-address the merits here.

####   2.  Second Cause of Action: Notice, Informal Interview, and Authority to Revoke

In the Court's TRO Order, the Court held that Respondents must "provide Petitioner with an informal interview by December 10, 2025, as required under 8 C.F.R. § 241.13(i)(3)." *Id.* at 16. Respondents were further ordered "to submit a declaration from the ICE official who conducted the interview by December 12, 2025." *Id.* The Court finally ordered Respondents to show cause by December 8, 2025, why a preliminary injunction should not issue. *Id.*

In response to the Order to Show Cause, Petitioner argues that Respondents should be preliminary enjoined and ordered to release her from immigration custody for two reasons. *See* Dkt. 16 at 2–4. First, she contends she did not receive a meaningful informal interview under Section 241.13(i)(3) because the interviewing officers disclaimed reliance on her alleged missed check-ins and failed to explain why ICE waited several years after her 2014 and 2019 felony convictions to revoke her release. *Id.* at 2–4. Second, she contends Respondents did not file a declaration from the ICE official who conducted the informal interview, as required by the Court's December 3 order. *Id.* at 3–4.

Petitioner's first argument is unavailing. Upon her release from immigration detention in 2008, Petitioner agreed not to "commit any crimes" as a term of her supervision. Dkt. 1-5 at 2. She was convicted of two additional felonies in California state court in 2014 and 2019. *See* Dkt. 7-1 at 3, 7. As stated in the Notice of Revocation of Release, ICE not only revoked her release because of the alleged failure to report for her

check-ins, but also because she was twice convicted of felony charges following placement on supervised release. *See id.* at 7. Although the interviewing officer disclaimed ICE's reliance on the missed check-ins as a basis of revocation, evidence of her criminal convictions from 2014 and 2019 offers sufficient justification to revoke a grant of supervised release. Section 241.13(i)(1) states, "[a]ny alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody . . . ." 8 C.F.R. § 241.13(i)(1). Moreover, while it is true that Respondents waited several years to revoke her release after her felony convictions, Section 241.13(i)(1) does not reflect that there is a temporal bar limiting the government's ability to seek revocation of a supervised release order, and Petitioner has offered no authority to support her claim that Respondents must act on the revocation of supervision immediately. For these reasons, Petitioner's claim that she did not receive a meaningful informal interview within the meaning of section 241.13(i)(3) is unavailing.

Petitioner's second argument, that Respondents violated Section 241.13(i)(3)'s revocation procedures because they did not file the declarations as ordered by this Court, is likewise unpersuasive. Section 241.13(i)(3) requires Respondents to provide Petitioner with a prompt informal interview after returning her to custody. 8 C.F.R. § 241.13(i)(3). The informal interview is the noncitizen detainee's "opportunity to respond to the reasons for revocation stated in the notification." *Id.* They may, for example, "submit any evidence or information" the noncitizen believes shows "she has not violated the order of supervision." *Id.* Once the interview is complete, it is ICE's duty to then evaluate the contested facts and determine "whether the facts as determined warrant revocation and further denial of release." *Id.*

The evidence provided by Respondents—namely, Deportation Officer Jorge A. Suarez's declaration, Dkt. 7-1 at 1–5, and the Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i), Dkt. 7-1 at 10— suggested to the Court that ICE's internal records were either mistaken or otherwise lacked integrity. The Court addressed this issue by ordering Respondents to provide Petitioner

with an informal interview. Dkt. 13 at 16. By doing so, the Court explained that it was uncontested that "Respondents gave Petitioner written notice of the reasons for revoking her release when they revoked her release and re-detained her." *Id.* at 15. "[T]he only pending controversy at issue," the Court noted, "is whether Respondents provided Petitioner with an informal interview *after* they revoked her release and re-detained her." *Id.* The Court thus narrowly tailored the relief by requiring Respondents to give Petitioner an informal interview within seven days. *Id.* at 15.

Since that time, Respondents provided evidence that Petitioner was provided with an informal interview on December 9, 2025. *See* Dkt. 14 at 2; *see also* Dkt. 15-2. In addition, on December 12, 2025, Respondents filed a supplemental response, which included a declaration from Deportation Officer Ana Juarez. *See* Dkt. 15-1. Officer Juarez declared that on December 9, 2025, "another informal interview was conducted in which POGOSYAN had an opportunity to respond to the reasons for revocation of her OSUP. PO[G]OSYAN's attorney was present during the interview over the phone." *Id.* at 1. To prove this interview occurred, Juarez attached to her declaration a document titled "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)." *See* Dkt. 15-2. According to that form, Deportation Officer Noah Kichak conducted the interview and noted that Petitioner's other attorney, Jimmy Pham, was present during the informal interview. *See id.*

Moreover, Petitioner's second attorney, James Pham, submitted a declaration attesting that Petitioner received an informal interview on December 9, 2025, and that he was present telephonically. *See* Dkt. 16-1. According to Pham, Supervisory Detention and Deportation Officer Gilbert conducted the interview and was the only person who asked any questions. *Id.*

Based on the Court's review of the record and because it appeared to the Court that Officer Juarez was not the officer who conducted the interview on December 9, 2025, the Court ordered Respondents to file a supplemental declaration from the officer or officers who conducted the informal interview with Petitioner on December 9, 2025. *See* Dkt. 17.

-7-

The supplemental declaration was due December 29, 2025. *Id.* The Court cautioned Respondents and their attorneys that failure to comply with this order may result in monetary sanctions. *Id.* On January 12, 2026, Respondents filed an opposition that is unrelated to the current Motion for Preliminary Injunction. See Dkt. 21. Attached to that opposition is Exhibit B, a declaration signed under penalty of perjury by deportation officer Noah Kichak stating that he was present during the informal hearing of Petitioner held on December 9, 2025, along with officer Rigoberto Gilbert. Dkt. 21-2.

Thus, the Petitioner has not made a clear showing that she is likely to succeed, or has a fair chance of success, on her second claim that Respondents unlawfully revoked her release, in part, because they did not provide her with an informal interview. The evidence suggests that Petitioner, while being aided by her second attorney over the phone, had the opportunity to explain or address the basis of revocation as cited in the notice, specifically, to address the integrity of the two the crimes alleged. Thus, the record supports that Petitioner received a meaningful informal interview under Section 241.13(i)(3). While Respondents' non-compliance with the Court's order to provide a declaration from the officer who interviewed Petitioner, and their belated submission of Officer Kichak's declaration is an issue, it is not one that undermines the truth of whether Petitioner was provided an informal interview. Because Petitioner has been provided an informal interview, preliminary injunctive relief on her second claim is not warranted.

//
//
//

Accordingly, the Court **DENIES AS MOOT** the preliminary injunction. The Court **ORDERS** Petitioner to show cause in writing as to why the Petition for Writ of Habeas Corpus should not be dismissed as moot. Petitioner must file her response on or before March 20, 2026. Respondents may reply to the response on or before March 27, 2026. Petitioners may reply on or before March 31, 2026. The Court will order a hearing if necessary. The Court's December 31, 2026 order, that Petitioner not be moved to a location outside the jurisdictional boundaries of the United States District Court for the Central District of California during the pendency of this action, unless otherwise ordered by the Court, remains in effect. Dkt. 19.

**IT IS SO ORDERED.**

Dated: February 23, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE