UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARINE POGOSYAN,<br><br>               Petitioner,<br><br>   v.<br><br>PAMELA BONDI, et al.,<br><br>               Respondents. | Case No. 5:25-cv-03121-SRM-AS<br><br>**ORDER DENYING SECOND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [18]** |

      Before the Court is Petitioner Narine Pogosyan's ("Petitioner") Second *Ex Parte* Application for a Temporary Restraining Order ("Second Application for TRO"). Dkt. 18. Respondents Attorney General Pamela Bondi, Secretary of the Department of Homeland Security Kristi Noem, the United States Department of Homeland Security, Warden F. Semaia, and Immigration and Customs Enforcement Field Office Director Jaime Rios (collectively, "Respondents") oppose the Second Application for TRO. Dkt. 21. The Court has reviewed Petitioner's arguments, relevant legal authority, and record in this case. The Second Application for TRO is **DENIED**.

## I. BACKGROUND

The operative facts alleged include that Petitioner Narine Pogosyan ("Petitioner") was ordered removed from the United States and was detained pending removal in August 2008. *See* Dkts. 1 at 2[1]; 1-1; 1-3. Immigration and Customs Enforcement ("ICE") released her from custody and placed her on a grant of supervised release in November 2008. Dkt. 1-1 at 2. In October 2025, an unidentified Supervisory Detention and Deportation Officer ("SDDO") revoked Petitioner's release pursuant to 8 C.F.R. § 241.13 and re-detained her. *See* Dkt. 1-1 at 2; Dkt. 7-1 at 3.

Petitioner filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody pursuant to 28 U.S.C. § 2241 on November 19, 2025. *See* Dkt. 1. She asserts three claims. *See id.* at 10–12. The first argues that Respondents did not properly revoke her release under 8 C.F.R. § 241.13(i)(3) ("section 241.13") because there was no significant likelihood that her removal was reasonably foreseeable. *Id.* at 10. The second claim contends that Respondents failed to comply with the revocation procedures under section 241.13(i)(3) by failing to provide her with an informal interview. *Id.* at 10–11. The third cause of action claims Respondents violated Petitioner's Fifth Amendment right to due process by failing to offer an "individualized determination by impartial adjudicators as to whether detention is justified based on a danger of flight risk." *Id.*

On November 19, 2025, Petitioner also filed her first *Ex Parte* Application for a Temporary Restraining Order ("First Application for TRO"). Dkt. 2. On December 3, 2025, the Court issued an order granting, in part, Petitioner's First Application for TRO. *See* Dkt. 13 at 16. With respect to the first and third causes of action, the Court held that Petitioner failed to make a clear showing that she was likely to succeed on the merits of her claims. With respect to the second cause of action, the Court held that Petitioner was likely to succeed on the claim that she was not provided with an informal interview upon revocation of supervised release because the record showed conflicting evidence as to whether the interview took place. *See id.* Accordingly, the Court ordered Respondents to provide

---

[1] Page citations refer to CM/ECF pagination.

1  Petitioner with an informal interview and submit a declaration from the ICE official who
2  conducted the interview by December 12, 2025. See Dkt. 13 at 16. The Court also ordered
3  the parties to show cause why a preliminary injunction should not issue. *Id.*

4       On February 23, 2026, the Court denied the preliminary injunction as moot. The
5  court held that the evidence presented showed that Petitioner was provided an informal
6  interview on December 9, 2025, that Petitioner's counsel was present, and that the
7  interviewing Officer submitted a declaration, signed under penalty of perjury, attesting that
8  he and Officer Rigoberto Gibert were present for the Petitioner's interview on December
9  9, 2025. *Id.* The Court set the matter for an Order to Show Cause why the Petition for Writ
10 of Habeas Corpus should not be dismissed as moot. *Id.*

11      Before the Court is Petitioner's Second Application for TRO. *See* Dkt. 18.
12 Petitioner's argument centers on the second claim of the Habeas Petition, contending that
13 Respondents failed to comply with the revocation procedures under Section 241.13(i)(3).
14 Specifically, she contends she is entitled to immediate release from immigration custody
15 for two reasons. *See* Dkt. 18. First, she argues that Respondents improperly revoked her
16 release because the Supervisory Detention and Deportation Officer ("SDDO") lacked the
17 authority to revoke her release under Section 241.13(i)(3). Dkt. 18-2 at 12–14. Second, she
18 argues Respondents improperly revoked her release because they did not file the
19 declarations as required by the Court's prior orders. *See id.* at 13–14.

20      Respondents' opposition to the Second Application for TRO was due January 9,
21 2026. *See* Dkt. 19. Respondents filed the opposition on January 12, 2026. *See* Dkt. 21.
22 Plaintiff filed a reply the same day, reiterating that she is entitled to immediate relief for
23 the same reasons cited in the Second Application for TRO. *See* Dkt. 22. Petitioner also
24 argues that Respondents' opposition should be stricken. *Id.*

25 **II.   LEGAL STANDARD**

26      Federal Rule of Civil Procedure 65(b) governs temporary restraining orders
27 ("TRO"). A temporary restraining order is an extraordinary remedy meant to preserve the
28 status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing

and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

The standard for issuing a TRO and preliminary injunction is the same. *See Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1012 (C.D. Cal. 2020) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). To obtain a TRO, the movant must establish "that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a TRO is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a TRO under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant may obtain a TRO if she can show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, and (4) the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

Given the exigent nature of a TRO, a movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt*, 734 F.2d at 1394 ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a TRO. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## III.  DISCUSSION

### A.  Late Opposition

As an initial matter, Petitioner argues that Respondent's opposition should be disregarded as it is untimely. Dkt. 22 at 2. Local Rule 7-12 provides that "[t]he Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule." Respondents' opposition was due January 9, 2026, Dkt. 19, but they did not file it until January 12, 2026—three days after the deadline, *see* Dkt. 21. Although the opposition was not filed by the January 9 deadline, in the interests of efficiency in light of the complicated procedural posture of this case, the Court will not strike it in this instance. However, Respondent should be aware that any untimely filings in the future will be stricken.

### B. Authority to Revoke Release Under Section 241.13(i)(3)

In the Second Application for TRO, Petitioner argues she is entitled to immediate release from immigration custody because the SDDO did not have authority under Section 241.13(i)(3) to revoke her release. Dkt. 18-2 at 10–11. She claims that only the Executive Associate Commissioner of the former Immigration and Naturalization Service or the current Executive Associate Director of the Immigration and Customs Enforcement can revoke release. *Id.* Petitioner cites five cases in support of this proposition. *See id.* at 10 (citing *Santamaria Orellana v. Baker*, No. 25-1788, 2025 WL 2841886, at *1 (D. Md. Oct. 7, 2025) (*Santamaria II*); *Zhu v. Genalo*, 798 F. Supp. 3d 400 (S.D.N.Y. 2025); *Santamaria Orellana v. Baker*, No. 25-1788, 2025 WL 2444087, at *1 (D. Md. Aug. 25, 2025) (*Santamaria I*); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017)).

Petitioner's reliance on these cases is misplaced because these courts held that only certain officials can revoke release under 8 C.F.R. § 241.4.(l)(2) ("Section 241.4(l)(2)"), not Section 241.13(i)(3). *See Santamaria II*, 2025 WL 2841886, at *3 (holding that the official lacked authority to revoke release under Section 241.4(l)(2)); *Zhu*, 798 F. Supp. 3d at 413 (holding that the federal agents that encountered petitioner in the field did not have authority to revoke release under Section 241.4(l)(2)); *Santamaria I*, 2025 WL 2444087, at *6 (holding petitioner's revocation of release violated Section 241.4(l)(2) because this decision was not made by the Executive Associate Commissioner or district director); *Ceesay*, 781 F. Supp. 3d at 159–62 ("[T]his Court cannot conclude that [ICE's Assistant Field Office Director] had the authority to revoke release [under Section 241.4(l)(2)]."). The district courts in these cases relied on Section 241.4(l)(2)'s text, which identifies the "Executive Associate Commissioner" or a "district director" as the only officials who can revoke release under Section 241.4(l)(2). 8 C.F.R. § 241.4(l)(2). Unlike Section 241.4(l)(2), Section 241.13(i)(3) does not limit the authority to revoke release to certain designated officials. *See* 8 C.F.R. § 241.13(i)(3).

1    Here, according to the Notice of Revocation of Release dated October 3, 2025, Petitioner's order of supervised release was revoked pursuant to section 241.13. Dkt. 7-1. Petitioner has not provided any authority, nor has the court discovered support for the proposition that revocation of supervised release is not delegable when revocation is premised upon section 241.13 as opposed to section 241.4.

In the opposition, Respondents' primary argument—that there is a significant likelihood that Petitioner's removal is reasonably foreseeable within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001)—does not inform the Court's analysis of the issues raised in the Second Application for TRO. *See* Dkt. 21 at 13-18. Specifically, Petitioner does not assert that claim here, *see* Dkt. 18-2.[2] In addition, the Court previously ruled on whether Petitioner's removal was reasonably foreseeable in the context of evaluating the revocation of her OSUP by denying that claim in its ruling on the First Application for TRO. Dkt. 13.

Respondent's second argument centers on whether immediate release is an appropriate remedy to a procedural violation as opposed to whether the violation itself occurred. *Id*. at 18-22. Regarding the latter, Respondent simply concludes, "[p]etitioner does not establish that the government lacked authority to revoke her OSUP, particularly when her objections to detention center on her false assertion that the government cannot timely remove her to Armenia." *Id.* at 19. For the reasons stated, while the court agrees that Petitioner has not established that the SDDO at issue lacked authority to revoke Petitioner's grant of supervised release, it does not agree that the basis of this claim is Petitioner's "false assertion" regarding her removability to Armenia.

---

[2] In her Reply in Support of Motion for a Temporary Restraining Order, Petitioner clarified "that she is not yet raising a claim for release under *Zadvydas*. To the extent that her moving papers discuss the reasonable foreseeability of her removal, it is only in the context of evaluating whether the revocation of her OSUP was proper. *See* 8 C.F.R. §§ 241.13(h)(4), 241.13(i)(2)." Dkt. 9 at 4.

Nonetheless, Petitioner has not made a clear showing that she is likely to succeed, or has a fair chance of success, on this claim.

### C. Authority to Revoke Release: Compliance with Court Order

Petitioner also argues she is entitled to immediate release from immigration custody because of Respondents' repeated failure to comply with the Court's order that they provide a declaration from the officer or officers who informally interviewed Petitioner. Dkt. 18-2 at 13–14.

By way of background, in response to Petitioner's First Application for TRO, on December 3, 2025, the Court ordered Respondents "to provide Petitioner with an informal interview by December 10, 2025, as required under 8 C.F.R. § 241.13(i)(3)." Dkt. 13 at 16. Respondents were further ordered "to submit a declaration from the ICE official who conducted the interview by December 12, 2025." *Id.* The Court finally ordered Respondents to show cause by December 8, 2025, why a preliminary injunction should not issue. *Id.*

On December 9, 2025, Respondents filed their response to the order to show cause as to why a preliminary injunction should not issue. Dkt. 14. Respondents stated that Petitioner was provided with an informal interview on December 9, 2025. *See* Dkt. 14 at 2; *see also* Dkt. 15-2.

On December 12, 2025, Respondents filed a supplemental response, which included a declaration from Deportation Officer Ana Juarez. *See* Dkt. 15-1. Officer Juarez declared that on December 9, 2025, "another informal interview was conducted in which POGOSYAN had an opportunity to respond to the reasons for revocation of her OSUP. PO[G]OSYAN's attorney was present during the interview over the phone." *Id.* at 1. To prove this interview occurred, Juarez attached to her declaration a document titled "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)." *See* Dkt. 15-2. According to that form, Deportation Officer Noah Kichak conducted the interview and noted that Petitioner's other attorney, Jimmy Pham, was present during the informal interview. *See id.* Moreover, in her Reply in support of the

-8-

Second Application for TRO, Petitioner attached as an exhibit the declaration of Petitioner's second attorney, James Pham. Dkt. 16-1. In it, Mr. Pham attested that Petitioner received an informal interview on December 9, 2025, and that he was present telephonically. *See* Dkt. 16-1. According to Mr. Pham, Supervisory Detention and Deportation Officer Gilbert conducted the interview and was the only person who asked any questions. *Id.*

On December 18, 2025, because Respondents had not filed a declaration *from the ICE official who conducted Petitioner's interview*, as opposed to Officer Juarez, the Court ordered Respondents to file a Supplemental Declaration on or before December 29, 2025, from "the officer or officers who conducted the informal interview with [Petitioner] on December 9, 2025." Dkt. 17. Ultimately, on January 12, 2026, in filing an untimely opposition to the instant Second Application for TRO, Respondent attached a declaration signed under penalty of perjury by deportation officer Noah Kichak stating that he and officer Rigoberto Gilbert were present during the informal hearing of Petitioner held on December 9, 2025. Dkt. 21-2.

Petitioner argues that she is entitled to be released based upon Respondent's failure to file a declaration by Officer Kichak or Gilbert on or before December 29, 2025. Dkt. 18-2 at 13-14. While Respondents' belated submission of the declaration is a violation of the court's order, it is not one that undermines the truth of whether Petitioner was provided an informal interview as required by the Code of Federal Regulations. Here, the procedure mandated by section 241.13(i)(3) requires "an initial informal interview promptly after his or her return to service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). The section does not require a declaration signed by the officer who interviewed Petitioner. As there is no statutory violation, Petitioner has not made a clear showing that she is likely to succeed, or has a fair chance of success, on her second cause of action.

//
//

## IV.  CONCLUSION

For the reasons stated above, Petitioner has not made a clear showing that she is likely to succeed, or has a fair chance of success, on the merits of her claim that her supervised release order was improperly revoked. Accordingly, the Second Application for TRO is **DENIED.**

The court orders petitioners to show cause in writing as to why the Petition for Writ of Habeas Corpus should not be dismissed as moot. Petitioner must file her response on or before March 20, 2026. Respondents shall thereafter respond on or before March 27, 2026. Petitioners may reply on or before March 31, 2026. The court will order a hearing if necessary. The Court's December 31, 2025, order, that Petitioner not be moved to a location outside the jurisdictional boundaries of the United States District Court for the Central District of California during the pendency of this action, unless otherwise ordered by the Court, remains in effect. Dkt. 19.

**IT IS SO ORDERED.**

Dated: February 23, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE